IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

TRACY R. TURNER,                    )
                                    )
    Plaintiff,                      )          NO. 3:21-cv-00042
                                    )
v.                                  )          JUDGE RICHARDSON
                                    )
METROPOLITAN GOVERNMENT OF          )
NASHVILLE AND DAVIDSON              )
COUNTY,                             )
                                    )
    Defendant.                      )

## MEMORANDUM OPINION

Pending before the Court is Defendant's motion for summary judgment (Doc. No. 24, "Motion"). Defendant filed a memorandum in support (Doc. No. 25). Plaintiff filed a Response (Doc. No. 28) and Defendant filed a reply. (Doc. No. 36).

For the reasons discussed herein, the Court will deny Defendant's Motion.

## BACKGROUND

A.  Factual Background[1]

As of the commencement of the events discussed below, Plaintiff Tracy R. Turner was a captain with the Nashville Fire Department (NFD). Plaintiff's duties included responding to emergencies, directing initial responses to fires, overseeing the upkeep and operation of a fire engine, leading a team of two to four firefighters, and interacting with the public. Defendant Metropolitan Government of Nashville and Davidson County is a municipality in Tennessee that operates the Nashville Fire Department.

---

[1] The following facts are undisputed for the purposes of summary judgment.

From May through July 2020, Plaintiff posted on Facebook his opinions on several topics of national interest. For example, Plaintiff referred to people reacting violently to the death of George Floyd as "animals." He made other posts referring to "Anti-Fa and BLM thugs," and other generally negative posts about protestors, BLM, and the "Left agenda." Plaintiff's Facebook "bio" did not include a disclaimer that his views were his alone, rather than those of NFD, until August 3, 2020, at the earliest.

News outlets, politicians, and citizens responded negatively to these posts. For example, a member of the Tennessee House of Representatives, Vincent Dixie, stated:

> I don't think [Plaintiff] should be a fireman and a first responder in an African American — a predominantly African American — community. I just don't believe that because I don't believe that he's giving us 100 percent effort every time he goes out on a call and – when he sees a black person that's in need – that he's giving a 100 percent effort in order to save this person.

Nashville Councilmember Russ Bradford forwarded Director Chief Swann a message from a Nashville resident who apparently had seen a news report about Plaintiff's Facebook posts and stated, "[t]he person who made the statement (first name Tracy) is not fit to have a job/position be[i]ng responsible for saving lives of our citizens." Other Nashville residents made posts on social media decrying Plaintiff's statements.

Early on July 23, 2020, Plaintiff and his union representative met with NFD Human Resources ("HR") Director Jamie Summers, NFD Public Information Officer Joseph Pleasant, NFD Deputy Jerry Tomlinson, and NFD Assistant Chief Timothy Moyers to discuss Plaintiff's social media activity. Because of his social media activity, Turner received punishment with the following components: a) demotion from the position of Captain to the lowest ranked position within the NFD (firefighter); b) removal of his ability to bid for any favored positions within the

NFD for a period of two years; c) an order to attend "sensitivity" counseling; and d) relocation to a different fire hall—one in a less desirous location.

B. <u>Procedural Posture</u>

Plaintiff brings a single claim, which is brought under 42 U.S.C. § 1983 (Doc. No. 1 at 13). and is of a type commonly referred to as "First Amendment retaliation." He alleges that "Defendant's decision to demote the Plaintiff's employment was retaliatory in nature and based, in whole or in part, on his personal exercise of his protected free speech activity on matters of inherent public concern," thereby violating his right to freedom of expression under the First Amendment. *Id.*

Defendant filed its motion for summary judgment and memoranda in support, arguing that (1) Plaintiff's speech does not receive the highest level of protection under the First Amendment and (2) under so-called *Pickering* balancing (as established in *Pickering v. Bd. Of Ed. Of Tup. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968)(establishing that the Court must weigh the interests of the state against those of the public official in commenting on matters of public concern)), the Fire Department's interest in public trust and efficiency outweigh Plaintiff's countervailing speech interests. Thereafter, the response and reply were filed.

<u>LEGAL STANDARD</u>

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary

under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Transp. Co.*, 446 F.3d 637, 640 (6th Cir. 2006) (citing *Anderson*, 477 U.S. at 248), *abrogated on other grounds by Young v. Utd. Parcel Serv.*, 575 U.S. 206 (2015). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634–35 (6th Cir. 2018). The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627–28 (6th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Alternatively, the moving party may meet its initial burden by otherwise "show[ing]"—even without citing materials of record—that the nonmovant "cannot produce admissible evidence to support a material fact (for example, the existence of an element of a nonmovant plaintiff's claim)." Fed. R. Civ. P. 56(c)(1)(B). If the summary judgment movant meets its initial burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628. Importantly, "[s]ummary judgment for a defendant [that has met its initial burden as the movant] is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial.'" *Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805–06 (1999) (quoting *Celotex*, 477 U.S. at 322).

Any party asserting that a fact cannot be or genuinely is disputed (i.e., any party seeking summary judgment and any party opposing summary judgment, respectively) can support the assertion either by: (a) citing to materials in the record, including, but not limited to, depositions, documents, affidavits, or declarations, Fed. R. Civ. P. 56(c)(1)(A), or (b) "showing" (i) that the adverse party cannot produce admissible evidence to raise a genuine dispute as to that fact or (ii) that contrary to the claim of the adverse party, the materials cited by the adverse party do not actually establish the absence or presence (as the case may be) of a genuine dispute as to that fact.[2]

In reviewing a motion for summary judgment, "this court must view the evidence in the light most favorable to the nonmoving party." *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id.* The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

<u>DISCUSSION</u>

When a public employee complains of government retaliation in response to the employee's speech, the inquiry begins by asking whether the speech addresses a matter of public concern. *Rankin v McPherson*, 483 U.S. 378, 384-86 (1987). If the speech addresses a matter of public concern, the inquiry

---

[2] Courts (appropriately) at times refer interchangeably to a party being able to raise a genuine issue as to fact and a reasonable jury being able to find in the party's favor on that fact, and this Court does likewise.

turns to whether the employee's free speech interests outweigh the government's interests in efficiency. *See Pickering*, 391 U.S. at 568. These two *Pickering* questions are both matters of law for the court to decide. *Taylor v. Keith*, 338 F.3d 639, 643 (6th Cir. 2003) (citing *Connick v. Myers,* 461 U.S. 138, 148 n. 10 (1983)). On the other hand, the answers to these questions naturally depend on the underlying facts. *See Connick,* 461 U.S. at 148 n. 10 And regarding the latter question, as stands to reason, if the court concludes that the evidence of record does not reflect facts showing that the government's interests outweigh the employee's, then summary judgment in favor of the government official-defendant is not appropriate. *Vojvodich v. Lopez*, 48 F.3d 879, 886 (5th Cir. 1995) "Because the (defendant) sheriff has not alleged that [the plaintiff's] activities actually or potentially affected the Sheriff's Office's ability to provide services, there simply is no countervailing state interest to weigh against the employee's First Amendment rights. !Thus, we cannot affirm the summary judgment in favor of [the sheriff] on this basis.").

If in the *Pickering* balancing the employee's interests outweigh the government's interests, the employee is next required to show that the retaliatory adverse action would chill an ordinary person from exercising his First Amendment rights. *Cockrel v. Shelby Cnty. Sch. Dist*., 270 F.3d 1036, 1048 (6th. Cir. 2001). Finally, the employee must show that his speech was a substantial or motivating factor behind the adverse action. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Both parties agree that Plaintiff's speech addresses a matter of public concern, and therefore *Pickering* balancing applies. (Doc. No. 25 at 11 n.4) However, the parties disagree as to whether Plaintiff's speech is entitled to the "highest rung" of First Amendment protection. *See Snyder v. Phelps, 562 U.S. 443, 452 (2011).* As an initial matter, the Court need not reach what level of protection Plaintiff's speech receives. That is because even if Defendant is correct that Plaintiff's speech does not receive the highest level of protection, Defendant cannot, at the

summary-judgment stage, meet its burden in showing it prevails under *Pickering* balancing.[3] (Doc. No. 25 at 14). The Court need only explain why, regardless of the level of protection, Defendant is not entitled to summary judgment under *Pickering*.

The Court would be remiss if it did not comment on the inherently subjective nature of this balancing test and the resulting reality that its outcome in a particular case well may be judge-specific. In many cases, different judges reasonably could reach opposite conclusions as to the outcome of that balancing test. As noted in a concurring opinion in *Bennett*:

> With significant interests on both sides, what are courts to do? As in other contexts where "we must juggle incommensurable factors," I'm not sure I see a "right" or "wrong" answer to this balancing question. *Am. Jewish Cong. v. City of Chicago*, 827 F.2d 120, 129 (7th Cir. 1987) (Easterbrook, J., dissenting). In my respectful view after struggling with the task, *Pickering*'s instructions to engage in open-ended balancing do not provide helpful guidance to resolve concrete cases.

*Bennett*, 977 F.3d at 553 (Murphy, J., concurring). Part of the problem is that "this balancing requires [judges] to compare incomparable interests." *Id. See also Ingram v. Wayne Cnty., Michigan*, No. 22-1262, 2023 WL 5622914, at *16 (6th Cir. Aug. 31, 2023) (Thapar, J., concurring) (stating that the balancing test of *Mathews* v. *Eldridge*, 424 U.S. 319 (1976), "suffers from problems common to many balancing tests [because among things it] requires [judges] to compare values that aren't comparable." But whatever the problems with the *Pickering* balancing approach—an approach that, in its defense, like balancing tests generally does have some things

---

[3] The Supreme Court has indicated that any speech that concerns a public matter receives the highest level (or "rung") of protection, regardless of the relationship between the speech and the specialized knowledge (or lack thereof) of the speaker. *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection" (citations and quotations omitted)). *Bennett v. Metro. Gov't of Nashville & Davidson Cnty.*, 977 F.3d 530, 548-549 (6th Cir. 2020) (Murphy, J. concurring). On the other hand, the Sixth Circuit recently emphasized that "[c]entral to the concept of protecting the speech of government employees is the idea that public employees are the most likely to be informed of the operations of public employers and that the operation of such entities is of substantial concern to the public[,]" and suggested that the highest rung of protection is reserved to those "speakers that are exposing inner workings of government organizations to the public" such as whistleblowers and those employed at the entity they speak of. *Id.* at 539.

to recommend it vis-à-vis potential alternative approaches—the undersigned "must apply current doctrine where it stands." *Bennett*, 977 F.3d at 553 (Murphy, J., concurring). *Id.* at 556. This means conducting the *Pickering* balancing as he sees it, fully aware that another judge may view the balancing differently; after all, "[w]ith [multiple] subjective factors at play, will two judges ever balance them in the same way? I'm skeptical." *Ingram, 2023* WL 5622914, at *16 (Thapar, J., concurring).[4] So the undersigned will do here what a judge always must do when confronted with any balancing (or other kind of multi-factor) test: "call it like [s]he sees it." *Winters v. Lee*, No. 3:22-CV-00338, 2023 WL 2700705, at *4 n.11 (M.D. Tenn. Mar. 29, 2023). He does so below, confident that his conclusion is a sound one if it is a subjective one.

"The pertinent considerations' for the balancing test are whether the statement [ (a) ] impairs discipline by superiors or harmony among co-workers, [ (b) ] has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, [ (c) ] impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise, or (d) undermines the mission of the employer."[5] *Bennett v. Metro. Gov't of Nashville & Davidson Cnty.,* 977 F.3d 530, 539–40 (6th Cir. 2020) (internal citations and quotations omitted) (holding that Defendant was entitled to summary judgment when the Emergency Communications Center of Nashville disciplined an employee for posting on social media about Donald Trump's victory in the 2016 presidential election).

---

[4] Judge Thapar makes an important point here: a balancing test might not be subjective not only as a whole, but also with respect to its individual factors. That is, some or all of the individual factors may be subjective. Such is the case here, as noted below.

[5] The Court notes that each of these four factors is subjective to the extent that reasonable people can disagree as to, respectively, when something "impairs" something else and what constitutes "harmony", when something is "detrimental" and when a relationship is "close," when something impedes something else and what is "regular," and when something truly operates to "undermine" something else. But, as with the balancing test as a whole, the Court calls the individual factors like it sees them.

Defendant argues that the Fire Department's *Pickering* interests outweigh Plaintiff's speech interests. (Doc. No. 25 at 17). Defendant's arguments that go to (a) impairment of discipline by superiors or harmony among co-workers and (b) detrimental impact on close working relationships are that "Director Chief Swann was immediately concerned that Plaintiff's Facebook posts would disrupt fire hall camaraderie[,]" and "his fire crew knew about his social media activity[.]" (Doc. No. 25 at 18). Plaintiff points to testimony by Chief Downing and HR Director Summers stating that there was no negative effect on working relationships caused by Plaintiff's speech, and that no NFD employee complained about Plaintiff's posts. (Doc. No. 28 at 7). Mark Young, president of the local firefighter union, also testified that there was no impairment of discipline or morale within NFD. (Doc. No. 28 at 8). Thus, Defendant has failed to show that there is no genuine dispute of material of fact regarding factors (a) and (b) of *Pickering*. There evidently is a genuine dispute regarding the level of disharmony and detrimental impact among co-workers, and factors (a) and (b) weigh in favor of Plaintiff.[6]

Regarding factor (c), impediments to the performance of the speaker's duties and the regular operation of the enterprise (in this case NFD), Defendant argues that the NFD was inundated with messages and media inquiries, which wasted time that could have been used responding to emergencies. (Doc. No. 25 at 19).[7] Furthermore, because Plaintiff's job included interfacing with the community, a negative community response to his speech may affect his job performance. Plaintiff responds with testimony from Director Chief William Swann, who,

---

[6] Contrast this case with *Bennett*, in which there was no genuine dispute regarding factor (a) because there was testimony by the plaintiff's co-worker stating employees were upset by plaintiff's speech. *Bennett*, 977 F.3d at 536, 540. Instead, here there is testimony to the opposite effect.

[7] Though Defendant provides evidence that NFD personnel spent time responding to inquiries regarding Plaintiff's speech, Defendant does not provide evidence that doing so actually did impair NFD's ability to respond to emergencies.

according to Defendant, spent time fielding "at least one call" and writing a letter to Nashville Metropolitan Council. (Doc. No. 25 at 10, 19) (referencing Swann's deposition at Doc. No. 26-2 at 7-8 and 25-26).[8] Swann testified that there was no disruption of workflow caused by Plaintiff's speech. (Doc. No. 31-1 at 53). He also testified that Plaintiff's speech did not impede Plaintiff's job performance. (Doc. No. 31-1 at 12).

And although Defendant relies on the testimony of Mark Young[9] and Summers to establish that NFD received many calls, their testimony fails to support that there was disruption to NFD's operations caused by Plaintiff's speech. Summers testified that to his understanding, there was no discernible disruption to NFD's "workflow" as a result of that speech, (Doc. No. 31-1 at 53), and Young testified to having no knowledge of the existence of various circumstances (effect on NFD morale or close working relationships, unwillingness of NFD personnel to work with Plaintiff, impairment of Plaintiff's own performance as a firefighter, and undermining of NFD's mission), (Doc. No. 32-1 at 28), that would be the kinds of things that would cause disruption; the Court does not see where his testimony leaves room for an inference of disruption to NFD operations. Thus, Defendant has not met its burden in showing that there is no genuine dispute of material fact regarding factor (c), and this factor weighs in favor of Plaintiff.

Defendant argues, regarding factor (d), that Plaintiff's speech undermined the mission of NFD because, just as in *Bennett*, "[Plaintiff's] public comments discredited [the Fire Department]

---

[8] When citing to a page in a document filed by one of the parties, the Court endeavors to cite to the page number ("Page ___ of __") added by the Clerk's Office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/ creator of the document.

[9] Defendant argues that Mark Young is in no position to assess the effect of speech on NFD's operations. (Doc. No. 36 at 5). But Defendant does not explain why this is. Mark Young is involved in the operations of NFD as he was present at Plaintiff's disciplinary hearing, and he is the head of the local firefighter union. Therefore, he would have reason to know about matters relating to people in his union.

because they displayed racial bias without a disclaimer that the views were [his] alone." *Bennett*, 977 F.3d at 542. According to Defendant, Plaintiff's comments led several citizens and a state representative to conclude that he was racially biased.[10] (Doc. No. 25 at 16) Further according to Defendant, as a captain who interacted with the public and held a position of leadership within NFD, "Plaintiff's speech was more likely to harm the Fire Department's reputation" than was the speech of (at least most) other employees. (*Id*.). Defendant points to the various comments made by community members and politicians questioning NFD's ability to respond to emergencies. (Doc. No. 25 at 13-14). Plaintiff points to Mark Young answering "[n]o" when questioned whether "[Plaintiff's] post had in any way undermined the mission of the Nashville Fire Department?" (Doc. No. 32-1 at 27).

The Sixth Circuit recognizes that, because of their interaction with the public, police and fire departments have a stronger interest in guarding their public image than do other divisions of government. *See Bennett*, 977 F.3d at 541-42. Here, even more so than in *Bennett,* in which "only one member of the public [was] expressing concern," Defendant points to a significant amount of evidence suggesting Plaintiff's speech undermined NFD's mission by decreasing public confidence in NFD. (*Id*.) Defendant has shifted the burden of showing a genuine dispute of material fact regarding factor (d). Plaintiff does not show a genuine dispute regarding factor (d). Although Mark Young testified that there was no harm to NFD's mission (Doc. No. 25 at 8), Mark Young's testimony does not address multiple members of the public expressing lost confidence in NFD (Doc. No. 25 at 16-17) over which there is no genuine dispute. Thus, this factor weighs in favor of Defendant.

---

[10] The Court declines to opine on whether these comments were necessarily racially biased, in the sense of reflecting bias against Black members of the community, or whether instead they reflected a bias only against two kinds of individuals —rioters, and members and supporters of Black Lives Matter—that, to say the very least, obviously include persons who are not Black.

According to the Sixth Circuit in *Bennett*, "[s]everal factors weigh[ed] heavily in favor of Metro." *Bennett*, 977 F.3d at 545. But on the record as it stands at the current summary-judgment stage, only one factor, the undermined mission caused by reduced public trust, weighs in favor of Defendant; Defendant has failed to show that there is no genuine dispute of material fact that the other three factors weigh in its favor. Thus, summary judgment here is inappropriate.[11]

CONCLUSION

For the reasons discussed herein, the Court will deny Defendant's motion for summary judgment (Doc. No. 24). An appropriate accompanying order will be entered.


_Eli Richardson_
ELI  RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[11] The Court notes that at trial, the evidence relating to the various *Pickering* factors could be different from what it is now and may dictate a different outcome with respect to one or more particular factors and the *Pickering* balancing as a whole.